IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| BBP RETAIL PROPERTIES, LLC, *et al.* | |
| **Plaintiff,** | |
| **v.** | **Civil No.** 23-1610 (FAB) |
| TRIPLE-S PROPIEDAD, INC.; JOHN DOE; RICHARD DOE; XYZ COMPANY, *et al.* | |
| **Defendants.** | |

**OPINION AND ORDER**

BESOSA, Senior District Judge.

Before the Court are various discovery motions filed by plaintiff BPP Retail Properties, LLC ("BPP") and defendant Triple-S Propiedad, Inc. ("Triple-S"), including: (1) a supplemental motion for a protective order filed by Triple-S (Docket No. 134); (2) a motion for contempt against third-party Triple-S Management Corporation filed by BPP (Docket No. 137); (3) a motion to compel Triple-S to supplement its production of e-mail communications filed by BPP (Docket No. 152); (4) a motion to compel production of loss reserves filed by BPP (Docket No. 193); (5) a motion to compel communications withheld due to privilege filed by BPP (Docket No. 194); (6) a motion to compel production of documents filed by Triple-S (Docket No. 196); (7) a motion for sanctions and a protective order filed by Triple-S in response to BPP's improper

Civil No. 23-1610 (FAB)                                                    2

use of documents that Triple-S clawed back as protected work product (Docket No. 212); and (8) a second motion for contempt filed by BPP against a third-party for not complying with a subpoena (Docket No. 244.)

    For the reasons set forth below, Triple-S's supplemental motion for a protective order (Docket No. 134) is **GRANTED**. BPP's motion to compel production of loss reserves information (Docket No. 193) is **DENIED**. BPP's motion to hold in contempt third-party Triple-S Management Corporation for not complying with a subpoena is **DENIED**. (Docket No. 137.) Triple-S Management Corporation is, however, ordered to comply with the subpoena. BPP's motion to compel Triple-S to supplement its production of relevant e-mail communications (Docket No. 152) is **MOOT**. BPP's motion to compel production of communications improperly withheld as privileged (Docket No. 194) is **GRANTED**. Triple-S's motion to compel BPP to produce additional documents responsive to its First Request of Production of Documents (Docket No. 196) is **MOOT**. Triple-S's motion for protective order and sanctions due to improper use of clawed-back Optum documents (Dockt No. 212) is **MOOT**. Finally, BPP's second motion for contempt against the OIC (Docket No. 244) is **DENIED WITHOUT PREJUDICE.**

Civil No. 23-1610 (FAB)                                                     3

**I.    Background**

The motions currently before the Court were originally disposed of during a hearing before Magistrate Judge Marshal D. Morgan on August 28, 2025. (Docket No. 249.) Judge Morgan heard arguments on the motions chronologically. Triple-S's request for a protective order for documents pertaining to a Loss Portfolio Transfer Agreement between Triple-S and its affiliate, SunCap Limited, was granted. (Docket No. 134; Docket No. 249.) The parties stipulated that Triple-S would produce the Loss Portfolio Transfer Agreement ("LPT") to BPP under a confidentiality agreement. (Docket No. 281 at pp. 32, 36-38.) Triple-S, however, requested that Judge Morgan make a final ruling on Docket No. 134 after arguments were heard on Docket No. 193, which discussed whether information about the loss reserves in the LPT needed to be redacted. (Docket No. 281 at p. 37-38.) Judge Morgan did so, and in the end ordered that the LPT be produced under a confidentiality agreement with the loss reserves redacted because they were not relevant due to recent controlling precedent from the Puerto Rico Supreme Court. See Docket No. 249 at pp. 3-4 (citing Consejo de Titulares del Condominio Parques de Cupey v. Triple-S Propiedad, Inc., CC-2024-96 (P.R. Aug. 15, 2025). Accordingly, he denied BPP's motion to compel production of the loss reserves.

Civil No. 23-1610 (FAB)                                                    4

Next, Judge Morgan found that there was no need to hold Triple-S Management Corporation in contempt for its alleged violation of Fed. R. Civ. P. 45. Triple-S Management Corporation, however, needed to comply with the subpoena and produce relevant communications with Triple-S about BPP's claims that are not duplicative. Judge Morgan ordered Triple-S Management Corporation and BPP to meet and confer to determine how to best comply with the subpoena. (Docket no. 281 at pp. 56-57; Docket No. 249 at p. 2.)

Judge Morgan then denied BPP's motion to compel information on how Triple-S completed their e-mail server searches – described by Triple-S as "discovery on discovery." (Docket No. 172 at p. 11.) BPP wanted a list of custodians and terms searched on Triple-S's e-mail servers, among other things, in order to scrutinize Triple-S's compliance with the request for production of documents. (Docket No. 152; Docket No. 249 at p. 2.) Although he denied BPP's request, Judge Morgan ordered TPS to re-run searches "on the three .pst files[1] using the same parameters previously applied and to compare those results with the production already made in discovery." (Docket No. 249 at p. 2.) If there were any discrepancies, the parties were "to confer to determine what information or documents are missing." Id.

---

[1] .pst files are data files used to store copies of e-mails.

As to the communications on which Joaquín Acosta, Alejandro Gómez, Agustin Cofán, and Kristina Evans were copied, that Triple-S withheld as privileged (Docket No. 194,) Judge Morgan granted BPP's motion to compel. (Docket No. 249; Docket No. 282 at pp. 78-80.) Judge Morgan found that Triple-S's motion to compel BPP to supplement their response to its first request of production of documents (Docket No. 196) and motion for sanctions and a protective order due to BPP's improper use of clawed-back Optum documents (Docket No. 212) were moot. (Docket No. 249 at p. 4.) BBP's second motion for contempt against the Office of Insurance Commissioner ("OIC") (Docket No. 244.) was denied without prejudice.

On September 23, 2025, Judge Morgan recused himself from the case because Attorney Alfredo Fernández-Martínez, one of BPP's counsel, was a member of the Merit Selection Panel considering Judge Morgan's reappointment as a magistrate judge. (Docket No. 264.) The Court then indicated that it would "resolve the motions at docket numbers 134, 137, 1152, 193, 194, 196, 212 and 244" that Judge Morgan had previously resolved. (Docket No. 265.) On September 25, 2025, Triple-S filed an informative motion stating that it only disagreed with Judge Morgan's determination granting BPP's motion to compel production of documents that Triple-S asserted were privileged. (Docket No. 268 at p. 2.) BPP did not

Civil No. 23-1610 (FAB)                                                    6

express any disagreement with Judge Morgan's determinations on the
motions.    Nevertheless, the Court will address each motion
individually.

## II.  Discussion

### A. Production of Loss Portfolio Transfer Agreement (Docket No. 134) and Loss Reserves (Docket No. 193)

Triple-S requested that the Court issue a protective
order forbidding the disclosure of the LPT between itself and
Suncap Limited, a Cayman Island entity, that acquired Triple-S's
loss portfolio reserves related to claims for Hurricane María
damages. (Docket No. 139 at p. 7.)  At the hearing held by Judge
Morgan, however, the parties agreed to have the LPT produced under
a confidentiality agreement.  See Docket No. 281 at p. 32, 37.
Accordingly, Triple-S's motion for a protective order on the LPT
is **GRANTED**. (Docket No. 134.)

Triple-S, however, maintained its objection to BPP's
motion to compel production of the LPT without redacting the loss
reserves.  See id. at p. 37-38; Docket No. 193; Docket No. 204.
It relies on a recent Supreme Court of Puerto Rico case, which
determined that loss reserves were not relevant to a breach of
contract claim where the insurer is alleged to have acted in bad
faith during the investigation, adjustment and payment of the
claim.  See Docket No. 247-1 at p. 35; Condominio Parques de Cupey

Civil No. 23-1610 (FAB)                                                    7

v. Triple-S Propiedad, Inc., CC-2024-96 (P.R. Aug. 15, 2025).  BPP

argues that loss reserves are relevant because loss reserves would

tend to show if the attempt to settle the claim was reasonable,

fair and honest.  See Docket No. 282 at p. 16-17.

       Federal Rule of Civil Procedure 26 ("Rule 26") states

that "[p]arties may obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense and

proportional to the needs of the case" and that information "need

not be admissible in evidence to be discoverable."  Fed. R. Civ.

P. 26(b)(1).  Within the scope of Rule 26, a party may conduct

discovery by serving another party with a request for documents

pursuant to Federal Rule of Civil Procedure 34 ("Rule 34").  If "a

party fails to produce documents . . . as requested under Rule

34," the affected party may move for an order compelling discovery.

Fed. R. Civ. P. 37(a)(3)(B)(i), (iv).  "[A] trial court has broad

discretion in ruling on pre-trial management matters[.]"  Bonner

v. Triple-S Management Corp., 69 F.4th 677, 684 (1st Cir. 2023).

       "Loss Reserves correspond[ ] to an initial stage of the

claim process, serving as a preventive/preliminary measure that

does not necessarily reflect the legal reality of the claim.  In

other words, it is a preliminary estimate recorded as an accounting

liability in the insurer's financial statement, which represents

an anticipated obligation to be paid in the future as a result of

Civil No. 23-1610 (FAB)                                              8

past events." (Docket No. 247-1 at p. 19.) In other words, "loss reserves are funds that insurers maintain to cover claims for losses that have occurred but are not yet resolved." Id. at 25. "[T]heir principal purpose is to comply with financial solvency requirements and accounting regulation." Id. at 19. Thus, the creation of loss reserves "does not constitute an acceptance of coverage or an admission of liability . . . [because loss reserves] are merely preventive/preliminary estimates that, in general terms, do not entail an exhaustive evaluation of the factual and legal merits of a claim." Id. at 31.

   BPP argued that "there cannot be an astronomical difference between [the loss reserve] and [the offer to resolve the claim] . . . [because] the loss reserves . . . are set after [Triple-S] performed a thorough investigation and an adjustment is made." Id. at 19. The Court disagrees. As the Puerto Rico Supreme Court observed, loss reserves are not established after an exhaustive investigation, are not completed as a substantive analysis of the claim, and are not an acceptance of coverage or an admission of liability. See Condominio Parques de Cupey, Docket No. 247-1 at 26, 31. Loss reserves are different from an offer to resolve a claim because the offer is given after the insurer has completed a thorough investigation. So, one can presume that there will be a difference in amounts between loss reserves and the offer

to settle the claim.  For example, the initial estimate for the
loss reserve amount could simply be higher than the offer to settle
because the investigation showed that the covered damages were
less.  For that matter, even if both the loss reserves and the
amount to settle the claim were the same, it would not preclude an
inference of bad faith if the investigation in fact revealed that
the insured was owed a higher amount than initially estimated in
the loss reserves.  It is the investigation that reveals what
plaintiffs wish to prove, not the loss reserves.  As such, knowing
the loss reserves is not relevant in assessing the insurer's bad
faith.  Bad faith, however, can be established by looking at "the
reasonableness and diligence with which the insurer investigated
the claim, and the analysis as to whether the claimed damages were
covered under the policy," id. at p. 26, not by looking at loss
reserves "calculated on the basis of actuarial methodologies,
statistical assumptions, and regulatory criteria[.]"  Id. at p.
19.  Therefore, the Court finds that loss reserves are not relevant
to BPP's claims.  Accordingly, BPP's motion to produce the loss
reserves (Docket No. 193) is **DENIED**, and Triple-S shall produce
the LPT with the loss reserves redacted.

### B. Triple-S Management Corporation's Subpoena (Docket No. 137)

BPP moves the Court to hold Triple-S Management Corporation in contempt because it failed to comply with a subpoena when it failed to produce any document from its e-mail servers. (Docket No. 137.)  Triple-S Management Corporation asserted at the hearing that its e-mail servers are the same as Triple-S, and that all relevant documents have been produced.  (Docket No. 281 at p. 42.)  To compel non-parties to produce documents, a movant must serve the non-party a subpoena pursuant to Fed. R. Civ. P. 45 ("Rule 45").  See Vázquez-Fernández v. Cambridge Coll., Inc., 269 F.R.D. 150, 165 (D.P.R. 2010).  Rule 45 allows a party or attorney to issue third-party subpoenas if either:

> takes reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

Philips Med. Sys. Puerto Rico, Inc. v. Alpha Biomedical & Diagnostic Corp., 2020 WL 12604854, at *2 (D.P.R. 2020) (quoting Fed. R. Civ. P. 45(d)(1)) (McGiverin, M.J.).  A Rule 45 subpoena is still subject to the scope of discoverable information set forth in Rule 26(b)(1).  See Smith v. Turbocombustor Tech., Inc., 338

Civil No. 23-1610 (FAB)                                          11

F.R.D. 174, 176 (D. Mass. 2021). A third-party that has been served with the subpoena and fails to comply with it without adequate excuse may be held in contempt. Fed. R. Civ. P. 45(g).

Triple-S Management Corporation argued at the hearing that its servers are the same as Triple-S's servers, which had already been searched and produced by Triple-S, who had produced all of the responsive records found to BPP. (Docket No. 281 at p. 51.) Judge Morgan found that contempt was not necessary but ordered Triple-S Management Corporation to comply with the subpoena and the parties were "to meet and confer regarding the manner in which compliance will be effected." (Docket No. 249 at p. 2.) The Court agrees. BPP's motion for contempt against Triple-S Management Corporation is **DENIED** but it is ordered to respond to the subpoena.

> **C. Incomplete Searches of E-mail Servers (Docket No. 152) and Improper Use of Clawed Back Documents (Docket No. 212)**

BPP requests that Triple-S supplement its production of relevant e-mail communications that are responsive to BPP's first request for production of documents. (Docket No. 152.) BPP alleged that the searches ran on Triple-S's e-mail servers were defective, and that the documents produced were incomplete. Id. Judge Morgan ordered Triple-S to re-run the searches using the

Civil No. 23-1610 (FAB)                                           12

same parameters previously applied and compare the results with
what had already been produced. (Docket No. 249 at p. 2.) On
September 18, 2025, BPP informed the Court that the re-run searches
had already been completed and a significant discrepancy was found.
See Docket No. 260. Therefore, the Court finds that BPP's motion
at Docket No. 152 is **MOOT**.

Additionally, because the searches were to be re-run,
Triple-S withdrew its motion for a protective order of clawed-back
Optum documents. See Docket No. 281 at p. 107-08. Accordingly,
the Court finds that Triple-S's motion at Docket N2. 212 is also
**MOOT**.

### D. Production of Documents Withheld as Privileged (Docket No. 194)

BPP next requests that the Court order Triple-S "to
produce e-mails improperly withheld under assertions of
privilege." (Docket No. 194 at p. 1.) At the hearing, BPP informed
that the only issue as to the motion was whether communications
involving non-attorneys – Joaquín Acosta, Alejandro Gómez, Agustin
Cofán, and Kristina Evans– need to be produced. (Docket No. 282
at p. 72.) Acosta, Gómez and Cofán (hereinafter, "Consultants")
were retained by Triple-S to examine BPP's properties as part of
Triple-S's investigation of the claim. Kristina Evans is an
insurance broker from Marsh Saldaña. The documents in question

Civil No. 23-1610 (FAB)                                            13

are e-mails sent in the lead-up to a settlement conference in which counsel for Triple-S included these third parties. Triple-S claims that the communications are privileged under the common interest doctrine and the work product doctrine. Id. at p. 75. Judge Morgan determined that neither privilege applied because the Consultants were fact witnesses, not codefendants. Id. at 80.

On September 24, 2025, Triple-S urged the Court to consider that "the disclosure of attorney work product to a third-party does not necessarily waive the protection, [unless it was disclosed] in a way inconsistent with keeping it from an adversary," (Docket No. 268 at pp. 2-3 (citing Blattman v. Scaramellino, 891 F.3d 1, 5 (1st Cir. 2018)), and that "waiver does not apply to disclosures to third parties employed to assist a lawyer in rendering legal advice." Id. (citing Cavarallo v. United States, 284 F.3d 236, 247 (1st Cir. 2002) (internal quotations omitted).

Puerto Rico law governs the issue of privilege in this case, and the Commonwealth courts have not expressed an opinion about whether the common interest "privilege applies to communications made by the client or the client's lawyer to . . . another in a matter of common interest." Cavallaro v. United States, 284 F.3d 236, 249-50 (citing 3 Weinstein's Federal Evidence, § 503.21[1] (J.M. McLaughlin, ed. 2d ed.2002)); Fed. R.

Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."). Assuming the common interest doctrine applies, it only protects communications that were made in the course of and in furtherance of a joint defense effort. Centro de Periodismo Investigativo v. Fin. Oversight and Mgmt. Board for Puerto Rico, 2019 WL 13394132, at *6 (D.P.R. July 31, 2019) (McGiverin, M.J.). It "presumes a valid underlying privilege in the first place." Cavallaro, 284 F.3d at 240. Triple-S bears the burden of proving that the attorney-client privilege and/or work product doctrine apply to the communications. See In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003) (party invoking a privilege to resist discovery "bears the burden of establishing that [the privilege] applies to the communications at issue and that it has not been waived."); see also Amgen Inc. v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 289 (D. Mass. 2000) ("The party claiming the protection of a privilege bears the burden of demonstrating, by a fair preponderance of the evidence, not only that the privilege applies, but also that it has not been waived."). Triple-S asserts these elements are present, "but the justice system requires parties to show, not tell." Centro de Periodismo Investigativo, 2019 WL 13394132, at *6.

Civil No. 23-1610 (FAB)                                    15

        Here, the Consultants were hired by Triple-S to assess
the losses claimed by BPP in its insurance claim and are not
codefendants in BPP's lawsuit.  Additionally, Triple-S conceded at
the hearing that the Consultants are fact witnesses.  <u>See</u> Docket
No. 282 at p. 78.  Therefore, these e-mails are not protected by
the attorney-client privilege.

        Triple-S's second reason for refusing to disclose the
Consultants communications is that they constitute attorney work
product.  Triple-S attempts to classify the Consultants as experts
whom the attorneys engaged to "meaningfully" address a potential
settlement of the case.  <u>See</u> Docket No. 282 at p. 76.  Triple-S
argues that as a result, these communications fall under the
protection of the work product doctrine.

        The work product doctrine, established in <u>Hickman v.
Taylor</u>, 329 U.S. 495 (1947), and codified by Federal Rule of Civil
Procedure 26(b)(3), protects from discovery materials prepared "in
anticipation of litigation" by a party or a party's representative.
The rule also extends to protect materials prepared by non-lawyers
so long as they are "prepared in anticipation of litigation or for
trial by or for another party or its representative (including the
other party's attorney, consultant, surety, indemnitor, insurer,
or agent)."  Fed. R. Civ. P. 26(b)(3)(A).  "[C]ourts have generally
agreed that whether the work product [doctrine] applies depends on

Civil No. 23-1610 (FAB)                                              16

a fact specific inquiry into whether a given item of discovery was
produced in anticipation of litigation." <u>S.D. Warren Co. v. E.
Elec. Corp.</u>, 201 F.R.D. 280, 283 (D. Me. 2001).

      The First Circuit Court of Appeals has held that
documents serving both a litigation and business purpose may be
protected work product "if, 'in light of the nature of the document
and the factual situation in the particular case, the document can
be fairly said to have been prepared or obtained *because of* the
prospect of litigation.'" <u>Maine v. U.S. Dep't of the Interior</u>,
298 F.3d 60, 68 (1st Cir.2002) (citing <u>United States v. Adlman</u>,
134 F.3d 1194, 1202 (2d Cir.1998)) (original emphasis).  Under
this rule, the privilege does not attach to documents that were
prepared in the ordinary course of business or that would have
been prepared in "essentially similar form irrespective of the
litigation." <u>Adlman</u>, 134 F.3d at 1202.

      Here, Triple-S retained the Consultants to examine the
properties as part of Triple-S's investigation of the claim.
(Docket No. 282 at pp. 72-73, 75.)  There is no dispute that the
Consultants are fact witnesses that examined the properties.
Counsel for Triple-S, however, argues that when the parties engaged
in settlement conversations, they "engaged in [] communications
[with the Consultants] to try to understand the extent of what was
sought and the extent of what our position should be." <u>Id.</u> at p.

74.    "[W]hen the client has previously employed the agent independent of the attorney-client relationship, to perform the same services that he will perform for the attorney, this creates a risk that the agent's retention by the attorney is simply a subterfuge."  Cavallaro, 284 F.3d at 249.  Triple-S has not presented any contemporaneous documentation to suggest that when the mediation and settlement conferences began, the nature of the relationship with the Consultants changed.  See id. at 284 (no error in district court's finding that there was no documentation to support a change in the professional relationship that would trigger a privilege).  Accordingly, the Court finds that the e-mails do not constitute attorney work product and that Triple-S must produce these communications.

Finally, the other communications that BPP moves to compel are those with Kristina Evans, an insurance broker from Marsh Saldaña.  The Court agrees with Judge Morgan's finding that the communications are not privileged because Evans is not an attorney or an expert.  As such, there is no common interest or any privileged communications as an agent of Triple-S's attorneys.  Additionally, Triple-S does not point to any case law that would support their contention that communications with the insurance broker are privileged because the broker is needed to "engage in informed legal decision-making regarding its defense and potential

indemnity exposure in this matter." (Docket No. 214 at p. 11.) Accordingly, the communications with Kristina Evans must also be produced. BPP's motion to compel at Docket No. 194 is **GRANTED**.

### E. BPP's Production of Documents (Docket No. 196)

Triple-S moved the Court to compel BPP to produce all documents responsive to their First Request for Production of Documents. (Docket No. 196.) At the hearing, counsel for BPP proposed that BPP and Triple-S meet and confer again to resolve Triple-S's objections to BPP's document production. (Docket No. 282 at p. 85.) Triple-S accepted the proposal. Id. at p.88. Accordingly, Triple-S's motion to compel at Docket No. 196 is **MOOT**.

### F. BPP's Second Motion for Contempt against OIC (Docket No. 244)

BPP filed a second motion for contempt against the Office of Insurance Commissioner ("OIC") for not complying with the March 19, 2025 subpoena BPP sent to it. (Docket No. 244.) The OIC complied with the subpoena except for two requests: (1) "copies of all documents with loss reserves reports . . . from September 2017 to March 2025 . . ."[2] and (2) "all reinsurance treaties, contracts or agreements filed by Defendants with the [OIC] covering property

---

[2] As established above, loss reserves are not relevant to the case. Therefore, the OIC does not need to comply with BPP's request to produce the loss reserves reports. Allowing the OIC to disclose this information would allow an end run to the Court's ruling on Docket No. 193.

Civil No. 23-1610 (FAB)                                              19

claims for the year of 2017." Id. at p. 3. Triple-S objected to
the subpoena on the grounds that loss reserves and reinsurance
reports are subject to attorney-client privilege, work product and
statutory confidentiality. Id. Triple-S, however, did not file
a response to the motion for contempt.

During the hearing before Judge Morgan, the parties agreed to
jointly file an order to compel the OIC to respond to the subpoena.
(Docket No. 282 at pp. 93-95.) The Court is unaware if contempt
is still necessary because the parties have not provided any
information regarding the OIC's compliance or lack of it.
Accordingly, BPP's motion for contempt against the OIC (Docket No.
244) is **DENIED WITHOUT PREJUDICE.** The parties may file another
motion if the OIC continues to be unresponsive.

## III. Conclusion

For the reasons set forth above, Triple-S's motion for
a protective order for the Loss Portfolio Transfer Agreement
(Docket No. 134) is **GRANTED.** BPP's motion to compel production of
loss reserves information (Docket No. 193) is **DENIED.** Triple-S
will produce the Loss Portfolio Transfer Agreement under a
confidentiality agreement with redaction of the Loss Reserves.

BPP's motion to hold third-party Triple-S Management
Corporation in contempt for not complying with a subpoena is
**DENIED.** Triple-S Management is, however, ordered to comply with

Civil No. 23-1610 (FAB)                                                    20

the subpoena.  (Docket No. 137.)

       BPP's motion to compel Triple-S to fulfill its discovery obligations by re-running a search of e-mail servers (Docket No. 152) is **MOOT**.

       BPP's motion to compel production of communications improperly withheld as privileged (Docket No. 194) is **GRANTED**.

       Triple-S's motion to compel BPP to produce additional documents responsive to Triple-S's First Request of Production of Documents (Docket No. 196) is **MOOT**.  The parties agreed to meet and confer about the objections.

       Triple-S's motion for protective order and sanctions due to improper use of clawed-back Optum documents (Dockt No. 212) is **MOOT**.  Triple-S withdrew the motion.

       Finally, BPP's second motion for contempt against the Office of the Insurance Commissioner for violations of a Rule 45 subpoena is **DENIED WITHOUT PREJUDICE**.

       Magistrate Judge Morgan's minute order at Docket No. 249 is **VACATED**.

       **IT IS SO ORDERED.**

San Juan, Puerto Rico, November 26, 2025.

                    s/ Francisco A. Besosa
                    FRANCISCO A. BESOSA
                    SENIOR UNITED STATES DISTRICT JUDGE